IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GODO KAISHA IP BRIDGE 1, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:17-CV-00676-RWS-RSP |
| | § | |
| INTEL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

In this patent case, Defendant Intel Corporation moves the Court to dismiss for im-

proper venue or, alternatively, transfer the case to the United States District Court for the

District of Oregon. Def.'s Motion [Dkt. # 21]. Having considered the parties' briefing and

arguments of counsel during an August 8, 2018 hearing on the motion, the Court finds

venue is proper in this District and that Oregon is not a clearly more convenient venue.

Accordingly, the motion should be denied..

**I.      BACKGROUND**

On September 29, 2017, Godo Kaisha sued Intel for infringing claims of nine United

States patents that generally relate to semiconductor manufacturing. Compl. [Dkt. # 1].

Godo Kaisha is a Japanese entity with its principal place of business located in Tokyo. *Id.*

¶ 3. Intel is a Delaware corporation with its principal place of business in Santa Clara,

California. *Id.* ¶ 4. Although Intel has a global presence, the alleged infringement relates to

manufacturing techniques used at its fabrication facilities in Oregon, Arizona, New Mexico, Ireland, and Israel. *See* Auth Decl. [Dkt. # 21-1] ¶ 9 (noting "[t]he processes to make the accused Intel products were all developed in Oregon and then replicated at Intel fabs in Arizona, New Mexico, Israel, and Ireland" and "no Intel fabs for the accused Intel products are located in Texas").

Godo Kaisha bases venue in this District on two Intel locations—one in Plano and one in Richardson. Compl. [Dkt. # 1] ¶ 7. As for the Plano location, Godo Kaisha contends Intel made numerous representations about its presence at that location, and posted online job listings for employment, until shortly before Godo Kaisha filed this lawsuit. *Id.* Godo Kaisha emphasizes that Intel websites continued to advertise its presence at the Plano facility until at least early 2018. Godo Kaisha also contends Intel offered direct sales support from the Richardson office even after Godo Kaisha filed the lawsuit. *Id.*

On December 7, 2017, Intel moved the Court to dismiss the case based on improper venue, contending it does not have a "regular and established place of business" in this District as required by 28 U.S.C. § 1400(b). Def.'s Motion [Dkt. # 21]. Intel asserts the Plano location belongs to McAfee, a separate company that Intel sold in April 2017. *Id.* at 5. The Richardson site, says Intel, was a sales office that Intel obtained when it acquired Altera in December 2015. *Id.* at 5–6. But before this lawsuit, Intel says it made an internal decision to eventually consolidate the Richardson operations and employees into an existing Intel office in Dallas, just outside this district. Guesner Decl. [Dkt. # 21-3] ¶ 9.

As such, argues Intel, the Richardson office was not "regular and established," *id.*

at 6, even though Intel did not move out until late December 2017, after this suit was filed. Guesner Dep. [Dkt. # 52-3] at 62:8–14.

In its February 27, 2018 response, Godo Kaisha argues that Intel's strong connection to McAfee, continued marketing of the Plano operation as "Intel in Texas" after Godo Kaisha filed this suit, and Intel's provision to McAfee of continuing management services means venue is proper in this District. Pl.'s Resp. [Dkt. # 52] at 5. Godo Kaisha also argues that Intel's closure of the Richardson office after this lawsuit was filed is irrelevant to § 1406. Rather, the Richardson location was a functioning Intel sales office at least as late as the date Godo Kaisha filed the lawsuit, which is sufficient to find proper venue. Pl.'s Resp. [Dkt. # 52] at 12.

The parties allege other, more-nuanced facts in support of their positions on transfer under § 1404. Rather than recite them now, the Court will recount those facts within its analysis in Part III.B. *infra*.

## II.    APPLICABLE LAW

### A.    Venue Under 28 U.S.C. § 1400(b)

A patent owner may bring a patent infringement lawsuit where the defendant allegedly committed acts of infringement and has a "regular and established place of business." 28 U.S.C. § 1400(b). In cases based on nationwide sales of allegedly infringing products— like this one—determining the propriety of venue outside of the defendant's state of incorporation normally reduces to determining whether the defendant has a "regular and established place of business" in the plaintiff's chosen venue. And when challenged, the plaintiff

bears the burden of establishing that prong of § 1400(b). *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

"In deciding whether a defendant has a regular and established place of business in a district, no precise rule has been laid down and each case depends on its own facts." *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017). Clearly, however, there must be a physical location in the district from which the defendant carries out its business. *Id.* Moreover, that location must be the defendant's. *Id.* at 1863. Relevant considerations include whether the defendant owns, leases, or exercises other attributes of possession or control over the location, and whether marketing materials or advertisements indicate that the defendant itself holds out the place for its business. *Id.*

Courts determine venue under § 1400(b) by the facts and situation as of the date suit is filed. *See Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017); *see also In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) ("[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted") (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

## B.   Transfer Under § 1404

Regardless of whether the plaintiff's chosen venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. § 1404(a). A court should grant a motion to transfer under § 1404(a) if the proposed transferee venue is clearly more convenient than the plaintiff's chosen venue. *In re Volkswagen*,

545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The Fifth Circuit applies the "public" and "private" factors for determining forum

*non conveniens* when deciding a § 1404(a) question. *In re Volkswagen*, 545 F.3d at 314 n.9.

The "private" interest factors include (1) the relative ease of access to sources of proof; (2)

the availability of compulsory process to secure the attendance of unwilling witnesses; (3)

the cost of attendance for willing witnesses; and (4) all other practical problems that make

a trial easy, expeditious, and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241

n.6 (1981). The "public" interest factors are "(1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance

of unnecessary problems of conflicts of laws [or in] the application of foreign law." *In re*

*Volkswagen,* 545 F.3d at 315.

The plaintiff's choice of venue is not a factor in this analysis. *Id. at* 314–15; *id.* at

314 n.10. Instead, the plaintiff's choice of venue contributes to the defendant's burden in

proving the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at

315; *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). And though the private and

public factors apply to most transfer cases, they are not exhaustive or exclusive and no

single factor is dispositive. *In re Volkswagen*, 545 F.3d at 315.

Like motions to dismiss under § 1406, "[m]otions to transfer venue are to be decided

based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501

Fed. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343

(1960)).

### III.  DISCUSSION

#### A.  Venue is proper in this District.

##### 1.  *The Richardson Office*

The Richardson site was once a sales office of Altera, a company Intel acquired in December 2015. Compl. [Dkt. # 1] ¶ 7; Guesner Decl. [Dkt. # 21-3] ¶¶ 3–5. After the acquisition, Intel began consolidating Altera's operations into existing Intel facilities. Guesner Decl. [Dkt. # 21-3] ¶ 6, and Intel employees worked at the Richardson site after the acquisition, *id.* ¶ 3. The Richardson office continued to sell  Altera products under the umbrella of the new Intel Programmable Solutions Group. *Id.* ¶ 4. Before this suit was filed, Intel says that it internally decided, but did not announce even to it employees, to close the Richardson office and consolidate it with a nearby Intel site. *Id.* ¶¶ 6–8. But Intel did not close the office until three months after Godo Kaisha filed this lawsuit. Guesner Decl. [Dkt. # 52-3] at 62:8–14.

These facts establish proper venue in this District. Although Intel argues it never intended the Richardson office to be a permanent location after it acquired Altera, Def.'s Reply [Dkt. # 59] at 4, the statute does not require indefinite permanency. Nor does § 1400 consider a defendant's intent to abandon a place of business sometime later. When Godo Kaisha filed this action, the Richardson office was a longstanding physical location in this District from which Intel carried out its regular business of product sales, and Intel presents no evidence that such sales were transient in nature. That meets all the requirements for

proper venue.

During the August 8, 2018 hearing, Intel relied on *Winterbottom v. Casey*, 283 F. 518 (E.D. Mich. 1922), to support its position that the Richardson office was not "regular and established," but that case is easily distinguishable. In *Winterbottom*, the court's decision hinged on the defendant's engagement to do a particular job in the district—the construction of a sewer under a particular contract with Detroit. In contrast, the Richardson office was a typical sales office for products, first for Altera and then for Intel. There was nothing "transient" about the location.

### 2.     *The Plano Office*

As late as this year, Intel continued to advertise its presence in Plano online, referring to the Plano office as "Intel Security." Intel in Texas (Feb. 8, 2018) [Dkt. # 52-6] at 2 ("Intel Security in Plano, Texas focuses on combining the security expertise with the innovation, performance, and trust of Intel."). Intel also considered the Plano location as an Intel campus. Intel Campus Locations in the United States (Feb. 27, 2018) at 5. Moreover, Intel records show employees assigned to the Plano office as late as September 2017. *See* Table [Dkt. # 53-16].  However, in view of the sufficiency of the Richardson office, the Court need not decide whether the Plano office would suffice.

### B.     **The District of Oregon is not a clearly more convenient venue.**

### 1.     *Whether this case could have been brought in the District of Oregon*

Intel asserts Godo Kaisha could have properly filed this lawsuit in the District of Oregon. Def.'s Motion [Dkt. # 21] at 11. Godo Kaisha does not contest Intel's assertion.

Accordingly, the Court will assume this case could have properly been brought against Intel in that district.

### 2. *The Private Interest Factors*

#### a. the relative ease of access to sources of proof

Courts analyze this factor in light of the distance that evidence must be transported to the trial venue. *See In re Volkswagen*, 545 F.3d at 316; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (presuming the bulk of the discovery material relating to a corporate party is located at the corporate headquarters); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (noting the bulk of the relevant evidence in patent infringement cases usually comes from the accused infringer). *But see In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009) (noting that documents moved to a particular venue in anticipation of a venue dispute should not be considered).

Intel argues this factor strongly weighs in favor of transfer because documents that describe the structure, function, and operation of the accused products are in the Oregon fab. Def.'s Mot. [Dkt. # 21] at 11–12. The accused technology was developed there, and Intel is not aware of any relevant evidence in this District. *Id.* Indeed, Intel asserts the majority of its United States documents, along with "most of the individuals knowledgeable about the sales, marketing, and financing of the Accused Products," are in Oregon or northern California. *Id.* at 4–5, 12 (citing Auth Decl. [Dkt. # 21-1] ¶ 10).

Godo Kaisha's response points to certain layout files, stored in Austin, Texas, that describe the arrangement and structure of accused features. Pl.'s Resp. [Dkt. # 52] at 20–

21. Godo Kaisha also argues Intel's Austin site is "the birthplace of the Intel Atom® processors and SoCs," which include the accused products. *See* Intel in Texas (Feb. 8, 2018) [Dkt. # 52-6] at 1; *see also* Auth Dep. [Dkt. # 121-2] at 38:22–39:5 (noting the Atom microprocessor is a small product in Intel's portfolio); Def.'s Reply [Dkt. # 52] at 10 (arguing "[t]he Atom processors designed in-part at Intel's Austin facility . . . account for only 3% of the accused products in this case"). According to Godo Kaisha, the Austin facility employs numerous engineers and designers involved with the design of the Atom microprocessors and have knowledge relevant to the accused products. Moreover, Intel's largest customer, Dell, is also headquartered in Austin. 2016 Form 10-K [Dkt. # 52-17] at 68.

Godo Kaisha also claims relevant documents are located in Washington, D.C., and Virginia. Pl.'s Resp. [Dkt. # 52] at 20. Further, Godo Kaisha emphasizes that Intel's Arizona, New Mexico, Ireland, and Israel fabs—where other technical documents and hundreds of other engineers are located—are closer to this District than to Oregon. *Id.* at 20–21. Godo Kaisha expects third parties in and near this District—such as Dell, Texas Instruments, Broadcom, NXP, and AMD—to have relevant sources of proof. *Id.* at 22.

The Court presumes most of the material from Intel is located at its corporate headquarters in northern California. *See In re Acer Am. Corp.*, 626 F.3d at 1256 (presuming the bulk of the discovery material relating to a corporate party is located at the corporate headquarters). To the extent Intel documents are located in the Oregon fab, those documents are also available from the Arizona and New Mexico fabs. Auth Dep. [Dkt. # 121-2] at 110:13–

112:2 (noting test results are stored at the site where the tests are performed).[1] Layout files specific to one of the accused devices are stored in Austin. Auth Dep. [Dkt. # 121-2] at 46:5–9 ("The Austin facility, which creates the Atom microprocessor, which is a smaller product in Intel's portfolio, will likely have some layout files, as you put it, stored on the Austin site."). Godo Kaisha has identified a number potential third-party witnesses in and around Texas with potentially relevant material. *See* Pl.'s Initial & Add'l Disclosures [Dkt. # 53-3] at 7–8 (noting Texas Instruments, NXP, and AMD may have relevant information).

This factor somewhat favors transfer. Clearly, a substantial part of the documents at issue—those from Intel's Santa Clara headquarters and Hillsboro fab—are closer to Oregon than to this District. That many of the same documents might be available in Arizona and New Mexico lessens the weight of the factor, but does not change the outcome.

b.  the availability of compulsory process to secure the attendance of unwilling witnesses

The Fifth Circuit values absolute subpoena power when deciding motions to transfer, *In re Hoffman–La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009), and the party seeking transfer bears the burden of demonstrating and identifying unwilling witnesses that would benefit from the transfer, *see, e.g.*, *In re Apple, Inc.*, 581 Fed. Appx. 886, 891 (Fed.

---

[1] Intel's New Mexico fab is roughly 660 miles from Marshall and 1200 miles from Portland. The Court gives less weight to the fabs in Ireland and Israel in this analysis. *See In re Genentech*, 566 F.3d at 1345–46. For the same reason, the Court gives less weight to those documents and witnesses located on the east coast, which would have to travel a significant distance to *either* court.

Cir. 2014) ("[I]t is the burden of the party seeking transfer to show (1) that the witnesses would be unwilling to travel to the transferor district and (2) that the witnesses' testimony would be important to the issues at trial." (Bryson, J., dissenting)); *Oxysure Sys., Inc. v. Castaldo*, No. 4:115-CV-324, 2016 WL 1031172 (E.D. Tex. Mar. 15, 2016) ("Defendants bear the burden of demonstrating and identifying unwilling third-party witnesses that would benefit from the transfer.").

In any event, parties can secure the depositions of non-party witnesses regardless of the trial venue. Under amended Rule 45(a)(2), a court can issue nationwide deposition subpoenas as long as the deposition is to be taken within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). This gives parties the option to depose non-party witnesses near their residence or place of business and then present the deposition testimony at trial. Fed. R. Civ. P. 32(a)(4) (allowing a party to use the deposition of a witness if the witness is more than 100 miles from the location of the hearing or trial).

Here, Intel knows of two former employees in Oregon with knowledge about the prior art, but did not identify those former employees in its Rule 26 disclosures or make any showing they would be unwilling witnesses. Def.'s Motion [Dkt. # 21] at 12; *see* Def.'s Initial Disclosures [Dkt. # 53-14]. Godo Kaisha argues this District has subpoena power over more identified third parties than Oregon, noting the presence in or near this District of Intel customers Dell, Texas Instruments, NXP, and Hewlett Packard; Intel distributors generally; and fabricator GlobalFoundries. Pl.'s Resp. [Dkt. # 52] at 7. Intel contends the

identification of these third parties, which Godo Kaisha did not disclose until after Intel's

motion, is Godo Kaisha's attempt to buttress its venue position. Def.'s Reply [Dkt. # 59] at

9. Intel notes that Godo Kaisha did not list a single customer or other non-party as a live-

call witness on its trial witness list in a similar case pending in Northern California. *Id.*

Rather, Godo Kaisha identified only Executive Vice President Hideyuki Ogata, plus four

experts. *Id.*

This factor is neutral. Importantly, neither party has identified any third-party wit-

nesses that are unwilling to testify at trial. Moreover, the Court questions Intel's reliance

on the two former Intel employees given that Intel has not expressed an intent to call them

or identified their testimony. The Court also rejects Intel's argument that Godo Kaisha's

disclosures of potential third-party witnesses are merely an attempt to resist transfer given

that the disclosures were timely made before the Court's deadline for such disclosures. The

Court concludes the parties have not shown this factor weighs either for or against transfer.

c.       the cost of attendance for willing witnesses

A court should analyze this factor by giving broad "consideration [to] the parties

and witnesses in all claims and controversies properly joined in a proceeding." *In re*

*Volkswagen*, 371 F.3d 201, 204 (5th Cir. 2004). The court should consider all potential

material and relevant witnesses, regardless of the likelihood of their being called to testify

at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a

potential witness has more than relevant and material information at this point in the liti-

gation or risk facing denial of transfer on that basis is unnecessary."). "The convenience of

the witnesses is probably the single most important factor in transfer analysis." *Id*.

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor. *See In re Volkswagen*, 371 F.3d at 204–05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). Under that rule, the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If they are, the court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Generally, the 100-mile rule favors transfer if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

Importantly, however, the 100-mile rule should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. For example, when a particular witness would be required to travel a significant distance regardless of the chosen venue, that witness is discounted for purposes of the analysis. *Id.* at 1345–46 (discounting European witnesses and documents transported from Washington, D.C., in the analysis when reviewing a denial of transfer from Texas to California). Also, when inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other's is insufficient to affect a transfer-of-venue analysis. *In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir.

2011).

Here, Intel stresses that most of its witnesses, including all of its potential technical witnesses, are within 20 miles of Portland. Def.'s Motion [Dkt. # 21] at 13. And any witnesses needed from its headquarters are significantly closer to Oregon than to this District. Intel also disclosed OmniVision Technologies, Inc., of Santa Clara as a potential third party with information concerning validity or enforceability of the asserted patents and information relating to the licensing, transfer, sale and value of the asserted patents. *See* App. A [Dkt. # 53-21] at 2.

Godo Kaisha counters that, when considering all of the potentially involved third parties, travel to this District is less costly. Pl.'s Resp. [Dkt. # 52] at 18–19. Moreover, Godo Kaisha representatives regularly travel to Texas, but never Oregon. *Id.* at 19 (citing Ogata Decl. [Dkt. # 53-20] ¶¶ 5–8).

This factor weighs somewhat against transfer. Godo Kaisha identifies a number of third parties with witnesses within Texas for whom it would clearly less costly to appear in Marshall. *See* Pl.'s Resp. [Dkt. # 52] at 20–21 (identifying Dell, Texas Instruments, NXP, Broadcom,[2] TechInsights USA Inc., and AMD as entities with potentially relevant information and Texas offices).  Although Intel identifies numerous witnesses in and near Hillsboro, *see* Auth Decl. [Dkt. # 21-1] ¶ 7, the Court finds it unlikely Intel will call such a large

---

[2] Broadcom also has an office in Irvine, California, which is in the Central District of California.

number of its employees at trial given the cumulative nature of their testimony. And although Intel knows of two former employees in Oregon with knowledge about the prior art, Intel did not identify those former employees in its Rule 26 disclosures.

> d.  all other practical problems that make a trial easy, expeditious and inexpensive

This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *see also Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 25 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent."). The "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986)).

Godo Kaisha urges this factor weighs against transfer because of the Court's familiarity with the patents and technology from *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2:16-cv-00134-JRG-RSP (E.D. Tex.). Pl.'s Resp. [Dkt. # 52] at 15–16. Intel counters that this case involves additional patents with which this Court has no familiarity. Def.'s Motion [Dkt. # 21] at 14.

The Court agrees with Godo Kaisha in light of its familiarity with two of the patents

and the general technology arising from the claim construction in *Broadcom*.  While not sufficient to deny transfer on this factor alone, as Godo Kaisha urges, the Court finds this factor weighs against transfer.

> 3.     *The Public Interest Factors*

>> a.     the administrative difficulties flowing from court congestion

This factor considers the speed with which a case may be resolved in the plaintiff's chosen venue and in the proposed transferee venue. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Generally, this factor weighs in favor of the venue with the faster time to trial, but the speed of the transferee district court should not alone outweigh the other factors. *Id.*

Here, Intel cites to statistics suggesting only a small difference in time from filing to trial between the two venues. Defs.' Motion [Dkt. # 21] at 15 (noting a 3-month differ-ence in time to jury trials for patent cases). Godo Kaisha doesn't cite current statistics. Pl.'s Resp. [Dkt. # 52] at 25. The Court's own research suggests that, on September 30, 2017, the time from filing to trial in all civil cases in Oregon was 24.9 months compared to 23.8 months in this District.[3] Thus, this factor weighs slightly against transfer.

>> b.     the local interest in having localized interests decided at home

This factor considers the connection of the chosen venue's locality to the events giving rise to the suit. *See In re Volkswagen*, 371 F.3d at 205–06; *In re TS Tech*, 551 F.3d

---

[3] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2017.pdf at 35 (Texas Eastern), 74 (Oregon).

at 1321 (concluding that, where the accused products were sold nationally, the citizens of this District had no more or less of a meaningful connection to the case than any other venue). After all, "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation." *In re Volkswagen*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

In patent cases, the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue. *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). But if there are significant connections between a particular venue and the events giving rise to a suit, this factor should be weighed in that venue's favor. *Id.* For example, when the company asserting harm and many of the companies alleged to cause the harm are all residents of that district, as are the inventor and the patent prosecuting attorney whose work may be questioned at trial, the local interest favors transfer. *Id.*

Intel claims Oregon has a strong local interest in this case because the accused products were developed at the Oregon fab. Def.'s Motion [Dkt. # 21] at 15. Intel also contends that, because sales of the accused products occur throughout the United States, there is no particularly meaningful connection to this District. *Id.* Godo Kaisha counters that many of Intel's customers of the accused products are based in Texas, and have witnesses within or near this District. Pl.'s Resp. [Dkt. # 52] at 25.

This factor favors of transfer. The accused products are manufactured in Intel's Oregon facility, which is the type of "meaningful connection" that can give rise to a local

interest favoring transfer. In contrast, Godo Kaisha has not established any particular con-

nection to this District.

> c.   the familiarity of the forum with the law that will govern the case

Patent claims are governed by federal law, and both courts are capable of applying

that law to infringement claims. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed.

Cir. 2008). This factor is neutral.

> d.   the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law

Neither party has identified any specific conflicts-of-laws issues. This factor is neu-

tral.

## IV.   CONCLUSION

The Court should **DENY** Intel's Motion to Dismiss for Improper Venue or, in the

Alternative, to Transfer to the District of Oregon [Dkt. # 21]. First, venue is clearly proper

in this District based at least on Intel's presence at its Richardson office before Godo Kaisha

brought this suit. Second, Intel has not shown that Oregon is a clearly more convenient

venue: Two factors weigh in favor of transfer, two factors weigh against transfer, and the

remaining factors are neutral.

A party's failure to file written objections to the findings, conclusions, and recom-

mendations contained in this report within 14 days bars that party from *de novo* review by

the district judge of those findings, conclusions, and recommendations and, except on

grounds of plain error, from appellate review of unobjected-to factual findings and legal

conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see*

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 28th day of August, 2018.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE