# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Godo Kaisha IP Bridge 1<br><br>                     Plaintiff,<br><br>   vs.<br><br>Intel Corporation<br><br>                     Defendant. | Civil Action No. 2:17-cv-00676-RWS-RSP |

**INTEL'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ON
INTEL'S MOTION TO DISMISS FOR IMPROPER VENUE
OR, IN THE ALTERNATIVE, TO TRANSFER TO THE DISTRICT OF OREGON
(DKT. 131)**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................... 1

II. Intel's Objections To The Report And Recommendation ................................................. 1

    A. Venue Is Improper Under 28 U.S.C. § 1400(b) ....................................................... 1

        1. The R&R incorrectly found proper venue based solely on Altera's Richardson sales office, which never became a "regular and established" place of business for Intel under the law ................................ 1

        2. The R&R's finding of no connection to this District means venue is improper ...................................................................................... 4

    B. Proper Analysis of the Convenience Factors Compels Transfer Under § 1404 ............................................................................................................. 5

        1. The R&R incorrectly concludes that the cost of attendance for willing witnesses "weighs somewhat against transfer" ............................. 6

        2. The R&R incorrectly concludes that the ease of access to sources of proof only "somewhat favors transfer" ................................................. 7

        3. The R&R unduly weighs any judicial economy from *Broadcom* ............... 8

III. Conclusion ................................................................................................................... 9

**I.     INTRODUCTION**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), Defendant Intel Corporation ("Intel") respectfully objects to the Report and Recommendation ("R&R") (Dkt. 131) which recommended that the Court deny Intel's motion to dismiss for improper venue or, in the alternative, to transfer to the District of Oregon (Dkt. 21).

This case was filed by Godo Kaisha IP Bridge 1 ("IP Bridge"), a Tokyo-based IP fund sponsored by the Japanese government with no operations or employees in the U.S., let alone in this District. IP Bridge asserts nine patents that it acquired from Panasonic (another Japanese company), accusing Intel CPUs made under manufacturing techniques developed by Intel at its flagship facility in Oregon. The vast majority of Intel's witnesses and documents produced in this case are housed in Oregon. No specific third party witness in the District is listed on either party's disclosures. No Texas-based third party has produced documents. And IP Bridge's witnesses—who claim that the District is convenient for trial—have only been deposed in California and Japan. As the R&R found, "Godo Kaisha has not established any particular connection to this District." R&R at 18. The only alleged connection between Intel and this District found by the R&R is a now-closed field sales office for unaccused Altera products which Intel inherited when it acquired Altera. That office never became a "regular and established" place of Intel's business after the Altera acquisition: upon acquisition and before IP Bridge filed this case, Intel began shutting that facility down. The patent venue statute is not satisfied and the convenience factors require transfer.

**II.    INTEL'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

    **A.     Venue Is Improper Under 28 U.S.C. § 1400(b)**

        **1.     The R&R incorrectly found proper venue based solely on Altera's Richardson sales office, which never became a "regular and established" place of business for Intel under the law**

Intel respectfully objects to the R&R's finding that venue is proper based solely on the

Richardson office that Intel inherited when it acquired Altera. R&R at 6–7.[1] It is undisputed that from the moment Intel acquired Altera, Intel intended to, made plans to, and ultimately did close that facility. No post-*TC Heartland* authority holds that an acquired subsidiary's facility immediately and automatically transforms into a "regular and established" place of business of the acquiring company, particularly where the acquiring company intends to shut down the facility and follows through. Finding venue proper on this basis is inconsistent with the Federal Circuit's explanation of the requirements for a "regular and established place of business" under § 1400(b), and would impermissibly expand the scope of proper venue beyond what the law provides.

The R&R is not consistent with the Federal Circuit's September 2017 decision in *Cray*, which identified three requirements for finding "a regular and established place of business" under the venue statute: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The "regular and established" place of business must be "fix[ed] permanently," (*id.* at 1363), and "established," which "contains the root 'stable,' indicates that the place of business is not transient" and "must be 'settle[d] certainly, or fix[ed] permanently.'" *Id.*

*Cray* concluded that the requirement of permanence "clearly accords with the 'main purpose' identified in the predecessor statute's legislative history." *Id.* (quoting 29 Cong. Rec. 1900 (1987) (statement of Rep. Lacey)). That "main purpose" was to create proper venue not only in judicial districts in which a defendant was incorporated, but also "where a *permanent* agency transacting the business is located." *Id.* at 1361 (quoting 29 Cong. Rec. at 1900). Congress enacted §1400(b)'s predecessor against the backdrop of a previous more liberal rule that extended venue

---

[1] The R&R did not decide if McAfee's Plano office established proper venue. R&R at 7. It does not: Intel divested McAfee before this suit was filed and it is a separate company from Intel. Dkt. 21 at 8–10; Dkt. 59 at 4–7.

2

to any location in which a defendant could be served. *Id.* Accordingly, the legislation "was a restrictive measure, limiting a prior, broader venue." *Id.* Then, in *Cray*, the Supreme Court "instructed that '[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction.'" *Id.* (quoting *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961)).

A place of business cannot be "regular and established" or a "permanently" "fix[ed]" place "of the defendant" solely because it is inherited as part of a corporate acquisition. Something more is required. And here, upon acquisition, Intel slated the inherited Richardson office for closure, took concrete steps to close it before IPB filed this suit, and then shut down the office according to that pre-lawsuit plan. Dkt. 21 at 8–9; Dkt. 59 at 2–4. Importantly, the R&R acknowledges that Intel "argues it never intended the Richardson office to be a permanent location after it acquired Altera," and never concludes that argument was incorrect (R&R at 6); indeed, the undisputed evidence establishes that upon Intel's acquisition of the company, Intel began consolidating Altera's U.S. operations into existing Intel facilities. Dkt. 59 at 2–4. And the Richardson office continued to only sell Altera products (R&R at 6), not the Intel processors accused in this case. Dkt. 21-3 ¶ 4. The R&R incorrectly states that Intel "did not announce [the closure] even to it[s] employees." R&R at 6. In fact, the evidence shows that employees learned of the closure as part of Intel's "company-wide consolidation" by May 2016, more than a year before IP Bridge filed suit. Dkt. 21-3 ¶ 7. Intel documented its pre-suit plans to shut the Richardson office, and shut it three months after this lawsuit was filed. Dkt. 21-3 ¶ 9; Dkt. 59 at 3 (citing Exs. 64, 65).

The R&R incorrectly finds proper venue by concluding that the patent venue statute "does not require indefinite permanency." R&R at 6. Yet Intel's argument does not depend on that standard, which Intel never proposed in briefing or at the hearing. Rather, the undisputed evidence

3

established that Altera's Richardson site never became a permanent place of business of Intel's. Similarly, the R&R incorrectly concludes that "a defendant's intent to abandon a place of business" is not considered under § 1400. *Id.* at 6. But the Federal Circuit has plainly indicated that a defendant's intent ***is*** relevant to the venue analysis. *Cray*, 871 F.3d at 1365 (analyzing whether the defendant "believed a location within the Eastern District of Texas to be important to the business performed, ***or that it had any <u>intention</u>*** to maintain some place of business in that district") (emphases added).

The law's focus on intent and the requirement of permanency in order to establish venue under the patent law is not new. While the R&R states that the *Winterbottom v. Casey*, 283 F.518 (E.D. Mich. 1922), decision cited with approval in *Cray* is "easily distinguishable" because the defendant there was engaged only "to do a particular job in the district," that case repeatedly points out that a "regular place of business" is not met by presence in a district "for some special work or particular transaction." *Id.* at 521–522; *Cray*, 871 F.3d at 1362. Yet, Intel's temporary involvement with the inherited Richardson office was solely for completing Intel's one-time corporate ***transaction*** of acquiring Altera, not to establish a permanent physical presence in the District. Something more than simply buying a company is required before the acquired company's facilities transform into a "regular and established place of business" of the acquirer, particularly in the face of documented plans for closure, and the R&R's conclusion is incorrect under the law.

2. **The R&R's finding of no connection to this District means venue is improper**

Even if Altera's Richardson site could qualify as an Intel "regular and established" place of business, venue still is improper because there is no connection between alleged acts of infringement and that site. The R&R concluded that "Godo Kaisha has not established any

4

particular connection to this District." R&R at 18. But the Federal Circuit has stated that the connection between a defendant's alleged acts of infringement and the defendant's place of business in a district is central to the patent venue inquiry. *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). Particularly, "the regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction." *Cray*, 871 F.3d at 1361. That is because the patent venue provision was "clearly" intended to "narrow[] jurisdiction relative to the courts that previously allowed patent suits wherever" a plaintiff could establish personal jurisdiction over a defendant. *Id.* Because patent venue statute "requires more" than the minimum contacts needed for personal jurisdiction (*id.*), it follows, *a fortiori*, that "the suit must arise out of or relate to the defendant's contacts with the forum" for purposes of §1400(b) as well. *Bristol-Myers Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773, 1780-81 (2017).

Here, IP Bridge never showed *any* connection between the Richardson site and its infringement claims, as the R&R concluded. The R&R acknowledged that the lawsuit concerns "manufacturing techniques used at [Intel's] fabrication facilities in Oregon, Arizona, New Mexico, Ireland, and Israel," and Intel has no fabs in the District. R&R at 2. Indeed, Altera's Richardson site did not sell any accused product. *Id.* at 2, 6. Venue is improper under the R&R's findings.

    **B.**    **Proper Analysis of the Convenience Factors Compels Transfer Under § 1404**

Intel agrees with the conclusion that "Godo Kaisha has not established any particular connection to this District." R&R at 18. The R&R's finding that Oregon is not a clearly more convenient venue is at odds with this conclusion. Intel objects to the R&R's assessment of the relevant factors, which when properly weighed, establish Oregon as a clearly more convenient venue. *See Godo Kaisha IP Bridge 1 v. Xilinx*, 2:17-cv-100, D.I. 72 (E.D. Tex. Sept. 14, 2017).

5

1. **The R&R incorrectly concludes that the cost of attendance for willing witnesses "weighs somewhat against transfer"**

In finding that the third private interest factor "weighs somewhat against transfer," the R&R incorrectly values the cost of attendance for third parties over the cost for Intel's Oregon-based witnesses. The R&R significantly undervalues the cost of attendance for Intel's witnesses, finding "it unlikely Intel will call such a large number of its employees at trial given the cumulative nature of their testimony," while incorrectly not acknowledging that Intel will certainly call at least a number of them. R&R at 14–15. At the same time, the R&R Inconsistently finds this factor weighs against transfer based on six corporate third parties identified by IP Bridge "with potentially relevant information and Texas offices," without analyzing the likelihood that any of these witnesses will be called at trial, or whether their testimony is cumulative. *Id.* at 14.

Intel explained why it is unlikely that any of the six generically-identified third-party corporations, which IP Bridge added to its disclosures only after Intel filed this motion, will be called at trial. Dkt. 59 at 9. To dispose of these facts, the R&R states as a legal principle that transfer analysis should not consider "at this point" the likelihood of witnesses actually being called to testify. R&R at 12, citing *In re Genetech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). But the facts of *Genetech* do not apply here, at least because this Court initially denied the defendant's motion to transfer within two months of its filing in *Genentech*. Lawless Decl. Ex. 1 at 5–6. When the Federal Circuit granted Genetech's *mandamus* petition and ordered transfer on May 22, 2009, ***more than eight months*** remained until the close of fact discovery on January 28, 2010. *Id.* at 6. In contrast, Intel filed its motion over nine months ago (Dkt. 21), and fact discovery closes in ***12 business days*** (Dkt. 138 at 3). It is thus clear "at this point" that IP Bridge's identified third-party witnesses should be given no weight because IP Bridge has not identified a single witness by name and therefore will not be permitted to call a representative from those six

companies at trial. *In re Sambrano*, 440 B.R. 702, 706 (Bankr. W.D. Tex. 2010) (disclosures listing "employees and agents of Hartford" did not comply with Rule 26, which requires specific names); *Mascagni v. Schlumberger Tech Corp.*, No. 16-439, 2017 WL 4127714 (W.D. La. Sept. 15, 2017) (insufficient under Rule 26 to generically identify "corporate representative(s)" and "former employees").

Unlike its assessment of third party companies, the R&R *did* analyze whether Intel's Oregon-based employees were likely to be called in minimizing the importance of those witness. R&R at 14–15. While Intel likely will not call every Intel witness from its disclosures to testify at trial once IP Bridge streamlines its 9-patent case for trial, Intel *will call* a number of them. The R&R incorrectly gives those highly-relevant, Oregon-based Intel witnesses less weight than IP Bridge's generically-identified third parties that likely will *not* testify.[2] This factor—"the single most important factor in transfer analysis" (*id.* at 13)—strongly favors transfer.

### 2. The R&R incorrectly concludes that the ease of access to sources of proof only "somewhat favors transfer"

The overwhelming majority of evidence in this case is in Oregon and Northern California. The R&R incorrectly "presumes" that most of Intel's relevant material in this particular case is located at its headquarters in California (R&R at 9, citing no record evidence) and states that "*[t]o the extent* Intel documents are located in [Oregon], those documents are also available from the Arizona and New Mexico fabs." *Id.* at 9, citing Auth deposition (emphasis added). But Intel submitted unrequited evidence showing that "'***the bulk*** of relevant evidence' *is in Oregon*, where the accused technology was developed at Intel's most comprehensive site in the world, with over 19,000 full-time employees." Dkt. 59 at 9–10, Dkt. 21 at 3–6, 11–12. The R&R's contrary

---

[2] The R&R correctly did not rely on IP Bridge's own Japan-based fact witnesses in its conclusion, consistent with the Fifth Circuit's "100-mile rule." R&R at 13–15.

7

assumptions are unsupported.  Moreover, the R&R's citation to Mr. Auth's deposition does not support the claim that all of Intel's relevant documents in Oregon "are also available" from other facilities.  R&R at 9.  Indeed, Mr. Auth's cited testimony merely states that each fab keeps test data regarding that fab's manufacturing efficiency, not that relevant Oregon technical, marketing, sales, and revenue documents are in duplicate in each fab.  Dkt. 21 at 11–12; Dkt. 59 at 9–10.

The R&R correctly acknowledges that Intel's Austin facility relates to Atom processors (only 3% of the accused products).  And none of Dell, Texas Instruments, or NXP have produced any documents.  The vast majority of depositions have been in Oregon, with none (venue discovery aside) in Texas.  Lawless Decl., Ex. 2 (Hearing Tr.) at 149–51.  Accordingly, this factor strongly favors transfer.

   3. **The R&R unduly weighs any judicial economy from *Broadcom***

The R&R concluded that its "familiarity with two of the patents and the general technology arising from the claim construction in *Broadcom*" "weighs against transfer."  R&R at 15–16.  Intel objects to the weight placed on this factor.  In relying solely on its familiarity with two of the nine patents-in-suit and "general technology" from *Markman* proceedings in *Broadcom*, the R&R does not identify material overlap in discovery, *Daubert*, case dispositive motions, or other substantive issues driving judicial economy.  This case involves seven additional patents, different defendants, and different accused products.  For the two overlapping patents, there is no identified *Markman* overlap, and the PTAB found all asserted claims of the '696 patent unpatentable, making it unlikely that the '696 patent will be tried.  Dkt. 59 at 8.  The mere overlap of two of nine patents-in-suit does not override that Oregon is clearly more convenient.  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).  Holding otherwise improperly collapses the transfer analysis into whether IP Bridge has merely previously filed suit on patents in this District, inoculating a plaintiff against transfer under § 1404(a).  *In re Google*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir.

8

Feb. 23, 2017).³

**III. CONCLUSION**

    Accordingly, Intel respectfully objects to the R&R, and the case should be transferred.

Dated: September 12, 2018                    Respectfully submitted,

/s/ *Gregory S. Arovas with permission,*
*by Michael E. Jones*
Michael E. Jones (SBN: 10929400)
Patrick C. Clutter IV (SBN: 2403634)
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com
patrickclutter@potterminton.com

Gregory S. Arovas (*pro hac vice*)
Jon R. Carter (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
Tel: 212-446-4800
Fax: 212-446-4900
gregory.arovas@kirkland.com
jon.carter@kirkland.com

Adam R. Alper (*pro hac vice*)
Sarah Piepmeier (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: 415-439-1400
Fax: 415-439-1500
adam.alper@kirkland.com
sarah.piepmeier@kirkland.com

---

³ The R&R's conclusion that the immaterially different times to trial in this District and Oregon does not warrant a conclusion that court congestion "weighs slightly against transfer." R&R at 16.

9

Michael W. De Vries
Christopher M. Lawless (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Tel: 213-680-8400
Fax: 213-680-8500
michael.devries@kirkland.com
christopher.lawless@kirkland.com

*Attorneys for Defendant
Intel Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on this the 12th day of September, 2018

*/s/ Michael E. Jones*
Michael E. Jones